UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH VILCHEZ LAUE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-6356** |
| **SHERIFF MARLIN GUSMAN, ET AL.** | **SECTION "R"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915(e)(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

### I.    Factual Background

The plaintiff, Joseph Vilchez Laue ("Laue"), is an inmate presently housed in the Bossier Parish Medium Security Facility in Plain Dealing, Louisiana. Laue filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin Gusman, the Orleans Parish Medical Department Director, an unidentified investigating officer in the Orleans Parish Prison ("OPP"), Wardens C. Ezeb ("Ezeb") and Winfield ("Winfield"), and two personnel employees of OPP, "Mr. Weaver and Mr. Hudson," for his allegations of inadequate medical care and the prison conditions while he was housed in OPP. *See* Rec. Doc. No. 1, p. 5. Each of the defendants were sued in their individual and official capacities.

Under a broad reading, Laue alleges that on August 23, 2012, he was arrested and booked as a pretrial detainee at OPP on charges of possession of heroin and drug paraphernalia. *Id.* at 7. He alleges that while he was being booked, he informed the nurse on duty of his "chemical dependencies."

*Id.* He alleges that while he was in the holding cell, he had a seizure from his withdrawal reaction to benzodiazepine and heroin, which resulted in him breaking his front tooth. *Id.* Laue also alleges that although he requested medical attention and treatment following his injury, he did not receive timely treatment, and contends that his request was ignored for quite some time. *Id.*

Laue also alleges that while he was in OPP in Tent -P8, a fellow inmate escaped, and because of this, Laue was allegedly interrogated, verbally abused, taunted with racial slurs, and threatened to be transferred to the "Old Parish OPP" where "violent, sexual convicted and capital offenders" are housed. *Id.* at 8. He also alleges that he was going to be labeled a "snitch" in the "Old Parish OPP," unless he provided information about the criminal investigation of the inmate who escaped.

Laue alleges that hours after the interrogation, he was transferred to the "Old Parish OPP" where he was placed on Tier A-2-R-6. *Id.* He alleges that upon his entry, he was not supplied with a "roll in kit" which consisted of adequate bedding sheets, blanket, towels and personal hygiene products. *Id.* He also alleges that while he was detained therein, he was in fear of his life because he was the only white detainee with the lessee bond, and because he witnessed a man being beaten and stabbed by three other inmates. *Id.* He alleges that at the time of this beating, no guards were on duty.

Laue also alleges that he filed administrative grievances for the unsanitary and hazardous conditions, including poor plumbing, mold in the showers, no hot water, and uncomfortable temperatures, before he was moved to Tent-P6, where he alleges that he was no longer in fear of his life. *Id.* at 9. However, in Tent-P6, Laue alleges that he was still subjected to subhuman conditions, including living in a tent, not being able to access natural sunlight, no recreation, and having to share nail clippers with inmates who are infected with Hepatitis A, B and C, as well as the HIV virus. *Id.* at 9-10.

Laue also alleges on November 29, 2012, he was accused of destroying a mattress and was told

to "sign a paper giving permission to take $60.00" out of his account for the replacement of the mattress, although he contends that he never destroyed a mattress. *Id.* at 10. Laue alleges that he never signed the authorization to debit his account, but that $40.00 was debited and removed from his account on November 29, 2012. *Id.* As such, Laue seeks compensatory damages with interest, and injunctive relief against OPP for the prison conditions and systematic deficiencies in the medical care, conditions and operations of OPP.

**II.     Standard of Review**

Title 28 U.S.C. §§ 1915A and Title 42 U.S.C. §§ 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III.      Analysis

#### A.      Claims Against Supervisory Officials

Laue has named Sheriff Gusman, Warden Ezeb, Warden Winfiled and the Director of the Medical Department at OPP, as defendants for their supervisory roles over OPP, the Medical Department, and over the grievance process. Laue claims that he complained about the inadequate medical care and prison conditions in OPP through the administrative grievance process, and did not receive timely relief. He has not, however, alleged that Gusman, Winfield, Ezeb or the Director of the Medical Department ("the Director") were made personally aware of the alleged inadequate medical care or prison conditions at OPP.

As supervisory officials over the jail, Gusman, Ezeb, Winfield and the Director would not be vicariously liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate at the jail allegedly violated Laue's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). They only would be liable under § 1983 if they were "personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120, 123 (5th Cir. 1980). Laue does not allege that Gusman, Ezeb, Winfield or the Director were present for, or personally involved in, any of the alleged concerns he has about prison conditions, his medical care, his interrogation or his grievance process. Laue also has not alleged that he has suffered any injury as a result of any directive, supervised training or activity, or other policy set forth by these supervisory officials which would create vicarious liability. *See Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988);

*Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

As such, Laue has not demonstrated a personal connection or action that would render Gusman, Ezeb, Winfield or the Director liable for their subordinates under § 1983. Under a broad reading, Laue simply imputes liability to Gusman, Ezeb, Winfield and the Director as the superior officials. This type of vicarious liability is not sufficient to state a non-frivolous claim under § 1983.

In the alternative, supervisory liability may exist under § 1983 "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir. 1987).

In the instant case, Laue has not pointed to a particular policy in place at OPP that has violated his constitutional rights. His claims address the general conditions at the prison and not particular policies. Thus, Laue's claims against Sheriff Gusman, Warden Ezeb, Warden Winfield and the Director of the OPP Medical Department are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### B.   Claims against OPP Medical Department Which is Not a Proper Defendant

Although somewhat unclear from the complaint, Laue seems to have asserted a claim against the Director of the OPP Medical Department as well as against the Medical Department itself. Other than the Director, Laue has not identified any other personnel in the OPP Medical Department as a defendant. However, § 1983 provides a federal cause of action against any <u>person</u>, who, acting under color of state law, deprives another of his constitutional rights. 42 U.S.C. § 1983; *see Will v. Mich. Dep't of St. Police*, 491 U.S. 58 (1989). A plaintiff must identify both the constitutional violation and the responsible <u>person</u> acting under color of state law. *See Flagg Bros.*, *Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk Country v. Dodson,* 454 U.S. 312 (1981).

Other than the Director, Laue has not identified any particular member of the OPP medical staff as a person to be held accountable in this instance. A prison and its administrative departments are not entities that can be sued under § 1983, because they are not juridical entities under state law capable of being sued and therefore are not "persons" for purposes of suit under § 1983, as the statute and case law define that term. *Cage v. Kent County Corr. Facility*, 113 F.3d 1234, 1997 WL 225647, at *1 (6th Cir.1997); *Johnson v. LCDC Med. Staff*, No. 09cv13, 2009 WL 1256906, at *2 (E.D. Tenn. Apr. 29, 2009) (suit against medical staff dismissed because "the Medical Staff is not a suable entity under § 1983"); *Holifield v. Mobile County Sheriff's Dep't*, No. 07-0321-CG-C, 2008 WL 2246961, at *5 (S.D. Ala. May 29, 2008) (suit dismissed because the prison medical care unit "does not appear to be a distinct legal entity that is subject to suit"); *Cullen v. DuPage County*, No. 99C1296, 1999 WL 1212570, *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester County Corr. Facility Admin.*, No. 97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); *Sponsler v. Berks County Prison*, No. 95–1136, 1995 WL 92370, at * 1 (E.D. Pa. Feb. 28, 1995); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill.1993).

Thus, to the extent that Laue asserted a claim against the medical personnel in the OPP Medical Department or the OPP Medical Department under § 1983, the claims against that defendant should be dismissed as frivolous. *Carter v. Strain*, No. 09-3401, 2009 WL 2390808, at *3 (E.D. La. July 31, 2009); *August v. Gusman*, No. 06-3962, 2008 WL 466202, at *7 (E.D. La. Feb. 13, 2008); *Staritz v. Valdez*, No. 06-CV-1926, 2007 WL 1498285, at *2 (N.D. Tex. May 21, 2007); *Banks v. United States*, No. 05-6853, 2007 WL 1030326, at *11 (E.D. La. Mar. 28, 2007).

### C. Claims Against Unidentified Investigating Officer

Laue named the unidentified officer who investigated him following a fellow inmate's escape as a defendant in this action. He does not allege that this unidentified officer specifically violated his

constitutional rights, but he does however allege that he was "interrogated, verbally abused, taunted and threatened to be transferred" to another facility. The Court finds that these claims do not rise to the level of a constitutional violation.

An inmate's claims of verbal insults, threats and derogatory remarks are not cognizable under § 1983. *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995). The Fifth Circuit has stated that "'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" (citation omitted) *Id.*; *accord Watson v. Winborn*, 67 Fed. Appx. 241, 241 (5th Cir. 2003); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Vessell v. Gusman*, No. 06-2294, 2006 WL 2067723, at *2 (E.D. La. July 19, 2006) (McNamara, J.) (citing *Calhoun*, 312 F.3d at 734; *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993)). It also is well settled that "[c]laims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment." *Jackson v. Liberty County*, 860 F. Supp. 360, 363 (E.D. Tex. 1994).

In this case, Laue's allegations of verbal threats and disrespect do not rise to the level of a constitutional violation. These claims should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### D. Unidentified Claims Against "Mr. Weaver and Mr. Hudson"

Laue has named as defendants, two employees of OPP, "Mr. Weaver" and "Mr. Hudson." Laue has not however alleged any facts or claims against these two individuals.

In order for a complaint to state a claim upon which relief can be granted, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §

1216, pp. 235–236 (3d ed.2004)). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557, 557).

Here, not only does Laue's complaint not allege any claims and or facts against these two defendants, but he also does not indicate how these two defendants violated his constitutional rights. However, the record indicated no evidence whatsoever of Weaver or Hudson's involvement. Thus, the Court finds that these claims should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### E.   Claims Regarding Prison Conditions, Inadequate Medical Care, Unsanitary Living Conditions, Insufficient Supply of Bedding, Lack of Recreational Opportunities, Taking of Funds

#### 1.   Prison Conditions

Laue complains that the living conditions in OPP are unsanitary and that he received inadequate medical care. His claims are frivolous.

As a pretrial detainee, Laue's constitutional claims arise under the Due Process Clause of the Fourteenth Amendment, which, like the Eighth Amendment, places a duty on the State to protect against harm to persons in its confinement. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). In this type of case, where the inmate alleges an "episodic act or omission" by jail officials, Walton must show that the official acted with deliberative indifference to his constitutional rights. *Id*., at 636 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. In applying this standard, the Court's have held that "the prisoner must show that the defendants (1) were aware of facts from which an inference of an

8

excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." *Id.* (citing *Farmer*, 511 U.S. at 842 & n.8).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

*Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997)) (citations omitted) (emphasis added).

### 2.     **<u>Inadequate Medical Care</u>**

Laue complains about the delay in medical care he allegedly received from the OPP Medical Department's Dentist. As discussed above, although the distinction is primarily one of formality, in order to determine whether a pretrial detainee's rights have been violated under the Fourteenth Amendment, the court applies an analysis identical to that applied in Eighth Amendment cases. *Hare*, 74 F.3d at 643. In doing so, like other Eighth Amendment claims, deliberate indifference by prison personnel to a prisoner's serious medical needs is actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).

"A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 440 Fed. Appx. 263, 264 (5th Cir. 2011). A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer*, 511 U.S. at 847; *see also Parrish v. Cleveland*,

372 F.3d 294, 302 (4th Cir. 2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff' Dep't*, 306 F.3d 515 (7th Cir. 2002) (same).

Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104. This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials or prison doctors and healthcare providers in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.* Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993)).

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.* Further, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates, at a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza*, 989 F.2d at 193 ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983." (emphasis added)); *see also Jackson v. Cain*, 864

F.2d 1235, 1246 (5th Cir. 1989).

In this case, Laue concedes that he was able to visit the dentist regarding his broken tooth. However, Laue complains that there was a delay in him receiving treatment, which caused him pain. The record reveals that Laue filed three grievances regarding his request to visit the dentist for his broken tooth, the first on November 28, 2012, the second on December 27, 2012, and the last one on January 7, 2013. *See* Rec. Doc. No. 1-1, p. 2-6.

Laue's first and second grievances requested to visit the dentist. In response, the Medical Department indicated that his sick call request was triaged and that he was on the waiting list to see the dentist. *Id.* at 3. After the filing of his second grievance, Laue actually visited the dentist on January 7, 2013. *Id.* However, he filed a subsequent grievance on January 7, 2013, disagreeing with the dentist's opinion that he was unable to get a filling at his first visit. *Id.*

Laue's representations do not indicate that he was denied constitutionally adequate medical care. Instead, he simply disagrees with the type of treatment provided by the dentist and was dissatisfied with the results. However, a doctor's decision whether to provide additional treatment and as to which medications to prescribe is a matter for medical judgment. *See Gobert*, 463 F.3d at 346. Mere error in the exercise of that medical judgment would not be sufficient to state an Eighth Amendment claim of intentional indifference. *See Samma v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012). In other words, the constitution does not guarantee a medical cure for the treatment provided to be constitutionally adequate. The law is clear that unsuccessful medical treatment does not gives rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

As such, Laue has failed to allege a denial of medical care sufficient to state a claim under § 1983. His claims should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### 3.      **Unsanitary Living Conditions**

Laue complains that the living conditions of the facility were substandard. The conditions described by the plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation. He does not allege a serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in the plaintiff's claims.

Laue complains of mold in the prison, uncomfortable temperatures, poor ventilation, being around individuals convicted of "serious violent crimes" as well as being exposed to individuals with HIV and Hepatitis viruses. Sanitation problems alone, although admittedly unpleasant, do not amount to constitutional violations. *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994); *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992); *Robinson v. Illinois State Corr. Ctr.*, 890 F. Supp. 715, 720 (N.D. Ill. 1995). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex.1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir.1986)); *accord Benshoof v. Layton*, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); *Gates v. Cook*, 376 F.3d 323, 342 (5th Cir. 2004). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib*, 138 F.3d at 215 (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

In this case, none of Laue's allegations about the overall conditions at OPP establish constitutional violations. *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no Eighth Amendment violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); *Causey v. Allison*, No. 08CV155-RHW, 2008 WL

4191746, at *1 (S.D. Miss. Sept. 9, 2008) (no Eighth Amendment violation where prisoner claimed black mold was growing in the shower but "admits that he has had no medical problems resulting from the black mold"); *McIntyre v. Phillips*, No. 07-527, 2007 WL 2986470, at *2-4 (W.D. Mich. Sept. 10, 2007); *Eady v. Head*, No. CIVASA04CA0648 NN, 2006 WL 2663776, at *3 (W.D. Tex. Sept. 15, 2006) ("Going without a shower and being exposed to the foul smell of a backed-up shower for two days on two separate occasions does not show deliberate indifference to Plaintiff's basic human needs or constitute cruel and unusual punishment in violation of the Eighth Amendment.").

Laue does not allege that he has suffered any injury, other than inconvenience, as a result of the conditions of the jail. As such, Laue's claims fall short of stating a constitutional violation, and this claim must also be dismissed as frivolous pursuant to § 1915, § 1915(e), § 1915A, and § 1997e.

### 4. Insufficient Supply of Bedding / Roll in Kit

Laue alleges that he was not provided with a "roll in kit" which included adequate bedding, among other personal hygiene items, when he was transferred to Tier A-2-A-6 in OPP. Laue however, has not alleged a substantial risk of serious harm from the lack of a bed or mattress, sufficient to constitute a cognizable claim for relief under § 1983.

The provision of bedding is within those matters committed to prison administrators' sound discretion. *Kot v. Matty*, No. 90-7644, 1991 WL 246906, at *2 (E.D. Pa. Nov. 15, 1991), *aff'd*, 980 F.2d 723 (3rd Cir. 1992). Federal courts have repeatedly held that the deprivation of bedding for a limited period of time is not per se unconstitutional. *See Grissom v. Davis*, No. 02-1916, 2003 WL 343248, at *2 (6th Cir. Feb. 12, 2003) (seven days without mattress, sheets or blanket was not a deprivation of basic human needs and did not cause plaintiff to suffer serious harm); *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping without mattress or blanket for four days on a concrete slab in a cell located ten feet from an exterior door during winter did not deny

plaintiff the minimal civilized measures of life's necessities); *Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress or blanket for two days was not unconstitutional when there was no evidence that inmate suffered any injury or adverse health consequences or that jail officials knew of and disregarded an excessive risk to his health and safety); *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress, pillow, sheets or blanket for four days, when plaintiff sought no treatment for any resulting medical condition or injury, was not unconstitutional).

As stated above, Laue alleges no serious harm or risk of serious harm, and the court can perceive none under the circumstances described by plaintiff arising from the lack of a mattress or other bedding. *Carter v. Strain*, No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009) (citing *McAllister v. Strain*, No. 08-5174, 2009 WL 500560, at *2-3 (E.D. La. Feb. 25, 2009); *Desroche v. Strain*, 507 F. Supp.2d 571, 580-81 (E.D. La. 2007). Thus, Laue's claim as alleged is frivolous and fails to state a claim upon which relief can be granted under § 1983. It must be dismissed pursuant to § 1915(e), § 1915A, and § 1997e.

### 5. Insufficient Outdoor Recreational Opportunities

Laue also alleges that he has not been provided with adequate and consistent opportunities for outdoor exercise or recreation, and that he has not been provided with adequate natural light. This complaint also is frivolous and fails to state a claim.

Inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a per se constitutional violation." *Lewis v. Smith*, 277 F.3d 1373, No. 00-31371, 2001 WL 1485821, at *1 (5th Cir. Nov. 13, 2001) (Table, Text in Westlaw) (citing *Stewart v. Winter*, 669 F.2d 328, 336 n.19 (5th Cir. 1982); *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir.1977)); *accord Sampson v. Corr. Corp.*, No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La.

Mar. 26, 2009) (citing *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991); *Beck v. Lynaugh*, 842 F.2d 757, 762 (5th Cir. 1988); *Lato v. Attorney Gen.*, 773 F. Supp. 973, 978 (W.D. Tex. 1991)). "[W]hat is constitutionally required, however, is that [the prisoner] not be confined for long periods without the opportunity for regular physical exercise." *Lewis v. Smith*, 2001 WL 1485821, at *1 (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982), *amended in part*, *vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982)).

Thus, to succeed on a claim under § 1983 for lack of exercise, a prisoner must set forth facts sufficient to "support the existence of any health hazard under the specific circumstances involved." *Ruiz*, 679 F .2d at 1152; *accord Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001); *Ordaz v. Lynaugh*, 20 F.3d 1171, No. 93-4290, 1994 WL 144882, at *4 (5th Cir. Apr. 15, 1994) (Table, Text in Westlaw); *Green*, 801 F.2d at 771. The plaintiff must also allege an actual injury caused by defendant's acts. *See Brock v. Sparkman*, 101 Fed. Appx. 430, 431 (5th Cir. 2004) (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986)) (prisoner who had bumps and bruises from repeatedly hitting his head on bunk bed had no cognizable injury); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993) (excessive force claim dismissed as frivolous when prisoner suffered no injury); *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990) (claims properly dismissed when plaintiff alleged insufficient causal connection between defendants' conduct and the claimed assault, and when plaintiff did not allege constitutional harm); *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 602 (5th Cir. 1988) (citing *Stachura*, 477 U.S. at 307) (§ 1983 is designed to compensate persons for actual injuries caused by deprivation of constitutional rights); *Jefferson v. City of Hazelhurst*, 936 F. Supp. 382, 386 (S.D. Miss. 1995) (To state a claim under § 1983, plaintiff must plead "a direct causal connection . . . without intervening factors, between the deprivation and some injury to plaintiff."). Laue has not alleged any such health issues.

Laue does not allege any constitutional violation arising from his recreational opportunities at OPP. He does not allege that he was deprived of recreation for any significant time period or that he suffered any physical injury or violation of his constitutional rights of any kind as a result of the alleged limitations on exercise at OPP. *See Hernandez*, 522 F.3d at 560 (Inmate who alleged that he was deprived of outdoor and out-of-cell exercise for thirteen months while in lockdown and that he suffered muscle atrophy, stiffness, loss of range of motion, and depression failed to show either that he was placed at substantial risk of serious harm or that he suffered a serious illness or injury sufficient to constitute an Eighth Amendment violation.); *Ordaz*, 1994 WL 144882, at *4 (Plaintiff failed to state a constitutional violation resulting from denial of recreation when he failed to allege health impairment or physical injury.) As such, Laue fails to state a cognizable § 1983 claim. It should be dismissed as frivolous and/or for failure to state a claim pursuant to § 1915, § 1915(e), § 1915A, and § 1997e.

### 6. **Misuse / Taking of Funds**

Laue alleges that he seeks to recover for the alleged loss or unauthorized deduction of $40.00 from his inmate account at the prison. His allegations, however, fail to state a federal claim.

The United States Supreme Court has held that when a deprivation of this sort by a state actor is unintentional, the Due Process Clause is not involved so long as there is a meaningful post-deprivation state remedy. *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986); *see also Arnaud v. Odom*, 870 F.2d 304, 308 (5th Cir.), *cert. denied,* 493 U.S. 855 (1989). The Supreme Court reasoned in *Parratt* that, where a deprivation is caused by a random and unauthorized act of an official, rather than by standard state procedure, the state cannot predict when such a loss will occur. The Court further observed:

> It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under 'color of law,' is in almost all cases beyond the control of the State.

> Indeed, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation.

*Parratt*, 451 U.S. at 541.

In *Hudson v. Palmer*, 468 U.S. 517 (1984), the issue facing the Supreme Court was "whether [its] decision in *Parratt v. Taylor* should extend . . . to intentional deprivations of property by state employees acting under color of state law." *Hudson*, 468 U.S. at 531 (footnote omitted). The Supreme Court answered this question in the affirmative, reasoning as follows:

> The underlying rationale of *Parratt* is that when deprivations of property are effected through random and unauthorized conduct of a state employee, pre-deprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur. We can discern no logical distinction between negligent and intentional deprivations of property insofar as the 'practicability' of affording pre-deprivation process is concerned. The state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct. Arguably, intentional acts are even more difficult to anticipate because one bent on intentionally depriving a person of his property might well take affirmative steps to avoid signaling his intent.

*Hudson*, 468 U.S. at 533.

The prison's loss or alleged misappropriation of funds from Laue's inmate account, whether random or intentional, is the same as that contemplated in *Parratt* and *Hudson*. *See Alexander v. Ieyoub,* 62 F.3d 709, 712 (5th Cir. 1995); *see also Copsey v. Swearingen*, 36 F.3d 1336, 1342 (5th Cir. 1994); *Augustine v. Doe*, 740 F.2d 322, 328 (5th Cir. 1984). The Fifth Circuit has recognized that Louisiana law provides adequate remedies for negligent or intentional deprivations of property. *Alexander*, 52 F.3d at 557 n.14 (citing *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984)). In this case, Louisiana's general tort law provisions, found at La. Civ. Code Art. 2315 *et seq*., provide an adequate remedy for any loss incurred by Laue.

The *Parratt/Hudson* doctrine teaches that, because "States could not predict and therefore could not safeguard against random and unauthorized deprivations through predeprivation process, adequate postdeprivation remedies were sufficient process." *Alexander*, 62 F.3d at 709 n.13. "[T]he

intentional wrongs of individual state employees are no more predictable (and arguably are less predictable) than negligent actions." *Augustine v. Doe*, 740 F.2d 322, 328 (5th Cir. 1984) (emphasis in original).

Laue does not specifically allege who his § 1983 claim of the taking of his money is against, but the Court finds that any of these claims are based on random, unpredictable acts and are foreclosed by the *Parratt/Hudson* doctrine. *See Alexander*, 62 F.3d at 712 (citing *Zinermon v. Burch*, 494 U.S. 113 (1990)). "The burden is on the complainant to show that the [state] remedy is not adequate." *Marshall*, 741 F.2d at 764. Laue has made no so such showing. Laue's remedy against the defendant lies in state court, and the instant action is legally frivolous.

### F. Defendant's in their Official Capacities

A prison official, as a representative of the Parish, could be liable under § 1983 only if his or her actions were in execution of an unconstitutional Parish policy or custom which inflicted injury or damage upon the plaintiff. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Here, Laue would have had to allege not merely that such an unconstitutional policy or custom exists, but that it was the proximate cause of his injury or damage, which he has not. *See Collins v. City of Harker Heights*, 503 U.S. 115, 122-24 (1992); *Berry v. McLemore*, 670 F.2d 30, 33-34 (5th Cir. 1982), *overruled on other grounds*, *Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986). Because Laue has failed to allege that he suffered from an unconstitutional policy or custom of the OPP, he has failed to state a cognizable § 1983 claim against the defendants in their official capacities. Thus, his claims should be dismissed as frivolous and/or for failure to state a claim pursuant to § 1915, § 1915(e), § 1915A, and § 1997e.

### IV. Recommendation

It is therefore **RECOMMENDED** that Laue's § 1983 complaint against Sheriff Marlin

Gusman, the Orleans Parish Medical Department Director, the Orleans Parish Medical Department, an unidentified investigating officer in the Orleans Parish Prison, Warden C. Ezeb, Warden Winfield, employee Weaver and employee Hudson, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. §§ 1915(e), 1915A and 42 U.S.C. §1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[1]

New Orleans, Louisiana, this 23rd day of June, 2014.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.